NOT DESIGNATED FOR PUBLICATION

No. 124,244

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE INTEREST OF L.B.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; MICHAEL J. HOELSCHER, judge. Opinion filed February 4, 2022. Affirmed.

*Laura E. Poschen*, of Law Office of Laura E. Poschen, of Wichita, for appellant.

*Kristi D. Allen*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before GARDNER, P.J., BRUNS and CLINE, JJ.

PER CURIAM: Father appeals the termination of his parental rights as to his minor daughter, L.B, who was born in 2015. On appeal, Father challenges the district court's findings that he is unfit and that his unfitness is unlikely to change in the foreseeable future. Father also challenges the district court's finding that the termination of his parental rights would be in L.B.'s best interests. Based on our review of the record on appeal, we find that the district court's findings of fact and conclusions of law were based on clear and convincing evidence. We also find that a preponderance of evidence in the record on appeal supports the district court's conclusion that termination of Father's parental rights is in L.B.'s best interests. As a result, we conclude that the district court did not err by terminating Father's parental rights under the circumstances presented in this case. Thus, we affirm the judgment of the district court.

1

Mother and Father were married in 2015, and L.B. was born the same year. Father's paternity as to L.B. was subsequently established in a separate action brought in the district court. Although L.B. is the only child that Father and Mother have together, Father has other adult children from prior relationships. The relationship between L.B.'s Father and Mother included allegations of domestic violence against each other. The record reflects that some of the arguments between L.B.'s parents have been in her presence. In July 2021, Father and Mother were divorced.

In February 2019, Father was convicted of domestic battery against Mother in the Wichita municipal court. In addition, both parents have filed multiple protection from abuse (PFA) petitions against each other. Even though most of the PFA actions have been dismissed before final resolution, Father successfully obtained a final PFA order against Mother in July 2020. However, Father voluntarily dismissed the PFA action in March 2021.

In July 2019, Wichita police officers took L.B.—who was then four years old—into protective custody after a welfare check at Mother's residence. The officers found L.B. with a neighbor, who reported seeing Mother stumbling up the stairs to her apartment and smelling like alcohol as well as feces. Because Father was being investigated by the Department of Children and Families (DCF) for allegations of abuse against L.B., the officers took the child into protective custody. On July 15, 2019, the State filed a child in need of care (CINC) action.

The district court held a temporary custody hearing a few days later. Father waived his right to an evidentiary hearing and Mother did not appear. As a result, the district court placed L.B. in the temporary custody of DCF with out of home placement with her maternal grandmother. In September 2019, the district court held an adjudication

and disposition hearing in the CINC action. Neither Father nor Mother contested the allegations asserted by the State in the CINC petition. Accordingly, the district court adjudicated L.B. to be in need of care and ordered her to remain in the temporary custody of DCF with out of home placement with her maternal grandmother. The district court also authorized DCF to place L.B. with Father—if appropriate—with ten days' prior notice to all parties.

In December 2019, the district court placed L.B. in the residential custody of Father and gave him discretion over any visitation with Mother. In June 2020, L.B. was returned to her maternal grandmother's home after Father was arrested for domestic battery against Mother. Thereafter, in November 2020, the State asked the district court to find Father and Mother to be unfit and to terminate their parental rights as to L.B.

The State alleged that Father was unfit for the following reasons:

- "[T]he use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 2020 Supp. 38-2269(b)(3).
- "[F]ailure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." K.S.A. 2020 Supp. 38-2269(b)(7).
- "[L]ack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child. K.S.A. 2020 Supp. 38-2269(b)(8).
- "[F]ailure to assure care of the child in the parental home when able to do so." K.S.A. 2020 Supp. 38-2269(c)(1).
- "[F]ailure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home." K.S.A. 2020 Supp. 38-2269(c)(3).

In the motion, the State also listed several "[c]oncerns" relating to Father, which included:

"Father failed to provide a safe and stable living environment for [L.B.]. Father and Mother have engaged in domestic violence incidents in the presence of [L.B.]. Father did not protect [L.B.] from Mother's alcohol abuse. Father failed to protect [L.B.] from Mother's instability and poor judgment. Father did not intervene on behalf of his child to protect [L.B.] from Mother's mental health and substance abuse issues. There were concerns for [L.B.]'s safety while in Father's care. Father has a history of domestic violence and there were concerns for his ability to protect [L.B.] from Mother's behaviors. Father did not make the necessary changes to his lifestyle to keep [L.B.] safe."

In addition, the State asserted that Father: (1) used drugs and failed to address his drug problem through treatment; (2) allowed inappropriate individuals to live in his house or on his property; and (3) continued to engage in domestic violence situations with Mother.

On May 18, 2021, the district court held an evidentiary hearing on the motion to terminate Father and Mother's parental rights. Although Father moved for a continuance because he had recently admitted to substance abuse and wanted the opportunity to complete outpatient treatment, both the State and guardian ad litem (GAL) for L.B. opposed the motion. They argued that the same issues had been present since the initial filing of the CINC action and that a prompt permanency determination would be in L.B.'s best interests. In denying the request for a continuance, the district court explained that the CINC action had been pending for nearly two years since the initial CINC filing and that it would not be in L.B.'s best interests to delay the proceedings.

Because Mother was not present at the hearing, the district court found her to be in default, admitted proffered evidence as to Mother, and terminated her parental rights. The State then presented testimony from several witnesses, including Darcia McDowell—a licensed mental health therapist; Leanne Wonser—the case manager assigned by Saint Francis Ministries (SFM) to work with the family, Amanda Galloway—the SFM case supervisor. The record reflects that the State also called Father as a witness. After

listening to the evidence and hearing the arguments of counsel, the district court took the matter under advisement.

On May 20, 2021, the district court announced its decision to terminate Father's parental rights. In support of its ruling, the district court made detailed oral findings on the record. In doing so, the district court discussed the relationship between Father and Mother, Father's drug abuse, and the environment at Father's home. Regarding the relationship between the parents, the district court found it to be "extremely tumultuous" and took judicial notice of court records relating to the various legal proceedings involving Father and Mother between 2017 and the time of the termination hearing. The court noted that despite successfully obtaining a PFA against Mother in July 2020, Father admitted to continuing to contact her up until the date of the termination hearing.

Specifically, the district court found

"The history of these parents illustrates that neither party is serious about ending contact with the other. [Father] testified that within this month [Mother] has threatened to kill him, which has happened frequently throughout their relationship, and he continues to have contact with her.

"The Court finds that the relationship between [Father] and [Mother] continues to this day and it is highly toxic and highly dangerous to both of them. More importantly— the toxic and ongoing relationship of the parents, even more importantly, it is dangerous to [L.B.], and she cannot return to [Father]'s home in the foreseeable future because the environment would be inappropriate and dangerous for the child."

As for Father's drug use, the district court found that Father submitted positive hair follicle tests for methamphetamine five times between April 2020 and January 2021. The district court also found that Father testified that he never knowingly used an illegal drug and does not need substance abuse treatment. The district court found that Father's

5

testimony was not credible because it contradicted the reasons he had given for requesting a continuance of the hearing in order to address substance abuse issues.

As for Father's living conditions, the district court found that his testimony about other individuals no longer living in the residence or on the property was not credible. In particular, the district court found the inconsistencies in the Father's testimony about S.K.—who was using methamphetamine while living on Father's property and was a felon convicted of aggravated endangerment of a child—to be significant. The court emphasized that Father included his own address as the service address for S.K. in protective orders he filed against him in December 2020 and February 2021, which would have been after he had allegedly evicted him from his property. The district court found that "[t]he credible evidence shows that S.K. was living at [Father]'s residence from October 2019 until at least February 2021, and those dates include the entire time that [L.B.] was reintegrated with [Father] at that address." The district court further found that this timeline meant that Father failed to properly notify case workers about individuals living at his address.

Ultimately, the district court found the State had proven by clear and convincing evidence that Father was unfit under the following statutory factors:

- "[T]he use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 2020 Supp. 38-2269(b)(3).
- "[P]hysical, mental or emotional abuse or neglect or sexual abuse of a child." K.S.A. 2020 Supp. 38-2269(b)(4).
- "[F]ailure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." K.S.A. 2020 Supp. 38-2269(b)(7).
- "[L]ack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child. K.S.A. 2020 Supp. 38-2269(b)(8).

6

- "[F]ailure to assure care of the child in the parental home when able to do so." K.S.A. 2020 Supp. 38-2269(c)(1).
- "[F]ailure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home." K.S.A. 2020 Supp. 38-2269(c)(3).

As a result, the district court concluded:

"[Father] is unfit by reason of conduct or condition which renders him unable to care properly for [L.B.], and the conduct or condition is unlikely to change in the foreseeable future. I find that it is highly probably that the facts asserted by the State are true, and, also, I find the facts true that I've listed out here today in my findings of fact."

"The Court has considered whether termination of parental rights as requested in the State's motion is in the best interest of [L.B.], and I find that termination of [Father]'s parental rights in this case is in the best interest of [L.B.]."

. . . .

"I order the parental rights of [Father] terminated pursuant to K.S.A 38-2269(a). I order [L.B.] placed in the custody of DCF for adoption or other placement. I order that DCF has discretion whether or not a final visit should occur and also the logistics of that visit if it is going to occur."

The district court's decision was journalized on June 18, 2021, and Father subsequently filed a timely notice of appeal.

ANALYSIS

*Issues Presented*

Father raises two issues on appeal. First, whether the State presented clear and convincing evidence to establish Father's present unfitness and that his unfitness was unlikely to change in the foreseeable future. Second, whether the district court erred in concluding that the termination of Father's parental rights is in L.B.'s best interests. In

7

response, the State contends that it did present clear and convincing evidence to establish that Father is unfit and that his unfitness is unlikely to change in the foreseeable future. Likewise, the State contends that the district court appropriately held that termination of Father's parental rights is in L.B.'s best interests.

*Standard of Review*

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); see *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Accordingly, the State may terminate the legal rights of a parent only upon "clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2020 Supp. 38-2269(a). If a district court makes such a finding, it must then consider whether termination is in the best interests of the child based on a preponderance of evidence. Ultimately, the primary concern of both district courts and appellate courts is the physical, mental, and emotional health of the child. K.S.A. 2020 Supp. 38-2269(g)(1).

When reviewing a finding of parental unfitness, we must determine—based on a review of all the evidence in a light most favorable to the State as the prevailing party—whether "a rational fact-finder could have found that decision 'highly probably, i.e., [supported] by clear and convincing evidence.'" *In re M.S.*, 56 Kan. App. 2d 1247, 1255-56, 447 P.3d 994 (2019), quoting *In re B.D.-Y.*, 286 Kan. at 705. Moreover, we are not to reweigh evidence, pass on the credibility of witnesses, or decide disputed questions of fact. Instead, we must resolve any conflicts of evidence in favor of the prevailing party. *In re M.S.*, 56 Kan. App. 2d at 1256.

8

When assessing whether a parent's present unfitness will continue for the foreseeable future, courts may appropriately look to a parent's history. See *In re K.L.B.*, 56 Kan. App. 2d 429, 447, 431 P.3d 883 (2018). Moreover, courts measure the foreseeable future from the child's perspective—which often differs from an adult's perception of time—and this perspective typically calls for a prompt permanent disposition. K.S.A. 2020 Supp. 38-2201(b)(4); *In re R.S.*, 50 Kan. App. 2d 1105, 1117, 336 P.3d 903 (2014); see *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008). Here, the district court found Father was unfit based on six statutory factors. Because Father combines discussion of some of these factors, we will address each factor as he frames it in his brief.

*Finding of Unfitness*

### K.S.A. 2020 Supp. 38-2269(b)(3)

A district court may terminate parental rights if there is clear and convincing evidence of "the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child." K.S.A. 2020 Supp. 38-2269(b)(3). On appeal, Father argues that the district court ignored evidence that the positive drug tests were somehow altered or resulted from Father unknowingly consuming methamphetamine. In support of this argument, Father points to a hair follicle test that was negative notwithstanding multiple tests that were positive for use of methamphetamine.

The State need not prove by direct evidence that a parent's drug use is—in and of itself—harmful to a child where clear and convincing evidence shows that the parent's failure to acknowledge his drug issues creates a significant impediment towards reintegration. See *In re C.A.G.-V.*, No. 113,334, 2015 WL 5224828, at *4 (Kan. App. 2015) (unpublished opinion) ("While there may not be direct evidence that Father's drug

use was in and of itself harmful to C.A.G.-V., there is clear and convincing evidence that Father's failure to acknowledge his drug issues created a significant impediment towards reintegration."). Based on our review of the record, we find the same is true here.

In this case, the record contains evidence that Father abused drugs and that his failure to acknowledge his drug use significantly impeded reintegration. In particular, Father submitted multiple hair follicle samples that tested positive for methamphetamine both during and after the six-month period where L.B. was residing in his home. Even though the district court only mentioned positive test results from April 11, 2020; August 11, 2020; October 16, 2020; October 27, 2020; and January 6, 2021, in its ruling, a review of the record also reveals that he tested positive for methamphetamine on January 8, 2020; March 3, 2020; and May 6, 2020. The district court also expressly found that Father's testimony about his substance abuse was not credible. Father was also unable to provide documentation at the hearing to corroborate his claim that independent testing produced negative results for methamphetamine.

Viewing the record in the light most favorable to the State, a rational factfinder could have found by clear and convincing evidence that Father's drug use rendered him unable to parent L.B. at the present or in the foreseeable future. Accordingly, we find the district court's reliance on K.S.A. 2020 Supp. 38-2269(b)(3) as a factor in terminating Father's parental rights was proper.

### K.S.A. 2020 Supp. 38-2269(b)(4)

A district court may also terminate parental rights based on "physical, mental or emotional abuse or neglect or sexual abuse of a child." K.S.A. 2020 Supp. 38-2269(b)(4).

Here, Father contends the district court erred in relying on this factor because there is no evidence showing he abused L.B. The State points out that there is evidence in the

record to establish that L.B. observed domestic violence between Father and Mother. Also, there is evidence that observing such violence was traumatic for L.B. In addition, the State argues that Father failed to accept responsibility for his role in continuing the toxic relationship with Mother.

Father admits to engaging in arguments with Mother in L.B.'s presence and that his relationship with Mother did not present a healthy environment for L.B. Further, L.B.'s therapist testified that being present during this fighting was emotionally traumatic for L.B. because she would "feel unsafe and fearful and scared." The therapist also testified that Father used L.B.'s therapy sessions in an attempt to address his ongoing issues with Mother instead of focusing on L.B.'s emotional needs. Yet despite the obvious issues in his relationship with Mother, Father continued engaging with her and allowed contact to occur. Father also mentioned protecting L.B. from Mother as a basis for obtaining a PFA, yet he still chose to dismiss the final PFA order.

Viewing the record in the light most favorable to the State, a rational fact-finder could have found by clear and convincing evidence that Father inflicted mental or emotional abuse or neglect on L.B. through his actions. Moreover, there is clear and convincing evidence that this condition was unlikely to change in the foreseeable future based on Father's repeated contact with Mother that continued up until the date of the termination hearing. The district court's reliance on K.S.A. 2020 Supp. 38-2269(b)(4) was proper.

### *K.S.A. 2020 Supp. 38-2269(b)(7) & K.S.A. 2020 Supp. 38-2269(c)(3)*

A district court may terminate parental rights based on the "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." K.S.A. 2020 Supp. 38-2269(b)(7). Likewise, a court may terminate parental rights due to a parent's "failure to carry out a reasonable plan approved by the court directed toward the

11

integration of the child into a parental home." K.S.A. 2020 Supp. 38-2269(c)(3). In his brief, Father combines these factors. He contends the evidence presented by the State is insufficient to support a finding that reasonable efforts made by SFM failed to rehabilitate the family or that he failed to carry out a reasonable plan directed toward reintegration.

Father fails to show that the district court's findings on these grounds are not supported by clear and convincing evidence in the record. Although there is no dispute that Father technically complied with many tasks set forth in his case plan, the evidence presented at the hearing shows that he failed to address SFM's primary concern by not acknowledging the traumatic effect of his toxic relationship with Mother on L.B. Even considering SFM's recommendation that Father and Mother cohabitate during the six months when L.B. was reintegrated, the record reveals that SFM actively worked to rehabilitate the family.

As Father acknowledges, he continued to contact Mother and engaged in arguments with her. This occurred despite Father having taken a domestic violence class and acknowledging that their relationship did not create a healthy environment for L.B. As such, the evidence shows that SFM appropriately worked with Father to provide him with a reasonable opportunity for reintegration to be successful. However, Father was unsuccessful carrying out the plan. See *In re M.S.*, 56 Kan. App. 2d at 1257.

Viewing the record in the light most favorable to the State, a rational fact-finder could have found by clear and convincing evidence that reasonable efforts made by SFM failed to rehabilitate the family and that Father failed to carry out a reasonable reintegration plan. Similarly, a rational factfinder could have found by clear and convincing evidence that Father would be unable to do so in the foreseeable future. As such, we find the district court's reliance on K.S.A. 2020 Supp. 38-2269(b)(4) and K.S.A. 2020 Supp. 38-2269(c)(3) was proper.

12

Lastly, a district court may terminate parental rights due to "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child." K.S.A. 2020 Supp. 38-2269(b)(8). Similarly, a court may terminate rights based on "failure to assure care of the child in the parental home when able to do so." K.S.A. 2020 Supp. 38-2269(c)(1). Again, Father contends there was not sufficient evidence presented by the State to support these grounds for terminating his parental rights. He asserts that SFM and the district court placed him a "Catch-22" position by requiring him to admit to allegations of that he was using methamphetamine and that he was in an abusive relationship with Mother in order to retain his parental rights. In response, the State argues that Father overlooks evidence that his own behaviors and choices resulted in the district court's decision to terminate his parental rights.

In support of his argument, Father cites *In re A.T.,* No. 123,690, 2021 WL 4128249 (Kan. App. 2021) (unpublished opinion). In that case, we considered whether a mother's refusal to admit to a specific incident of abusing her child was sufficient—in and of itself—to support a finding that her unfitness was unlikely to change in the foreseeable future. In terminating the mother's parental rights, the district court relied on a single incident in which one of her children sustained severe burns to her feet while taking a bath in mother's care. In reversing the district court, the panel found that mother's refusal to confess to the single incident was not sufficient "standing alone" to constitute "clear and convincing evidence that in the foreseeable future Mother would not adjust her conduct to meet the needs of her children." 2021 WL 4128249, at *8.

Unlike *In re A.T.*, there is evidence in the record of multiple issues reflecting on Father's unfitness as a parent both in the present and in the foreseeable future. Moreover, the expectation of those working with the family was that Father would simply acknowledge his own actions—including his drug use and relationship issues that

13

impacted his ability to parent—and not that he had committed a crime. As discussed above, the evidence in the record establishes that Father continued contacting Mother despite the repeated allegations of domestic violence. Furthermore, L.B.'s therapist testified it would be important for Father to take responsibility for his role in the incidents with Mother that caused trauma and emotional instability in L.B. In addition, SFM case workers echoed these sentiments. As also discussed above, the district court expressly found that Father's denial that he used methamphetamine was not credible and it is not our role to reweigh credibility.

Viewing the record in the light most favorable to the State, a rational fact-finder could have found by clear and convincing evidence that Father's lack of effort to adjust his circumstances to meet L.B.'s needs rendered him presently unfit at the time of the termination hearing and was sufficient to establish that this condition was unlikely to change in the foreseeable future. Thus, we find the district court's reliance on K.S.A. 2020 Supp. 38-2269(b)(8) & K.S.A. 2020 Supp. 38-2269(c)(1) was proper.

*Best Interests of the Minor Child*

After finding a parent unfit and that such unfitness is reasonably likely to continue, a district court next determines, by a preponderance of the evidence, if termination of parental rights is "in the best interests of the child." K.S.A. 2020 Supp. 38-2269(g)(1); *In re R.S.*, 50 Kan. App. 2d at 1116. This determination gives "primary consideration to the physical, mental and emotional health of the child" and involves weighing termination against the parent's continued presence. K.S.A. 2020 Supp. 38-2269(g)(1); *In re K.R.*, 43 Kan. App. 2d 891, Syl. ¶ 7, 233 P.3d 746 (2010). We will only overturn a district court's best-interests determination when it constitutes an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 2. A district court exceeds the latitude it is afforded and abuses its discretion if no reasonable person could agree with its decision or if its conclusion was based on a factual or legal error. 50 Kan. App. 2d at 1118. Because Father does not point

to a specific legal or factual error, the question becomes whether no reasonable person would reach the same conclusion as the district court.

Father argues the district court's decision was unreasonable because of the bond he has established with L.B. as well as his love for her. Although he acknowledges that it would not be in L.B.'s best interests to expose her to domestic violence, drug use or those who abuse drugs, Father asserts that he has taken steps to positively adjust his circumstances. Although this is a difficult case because Father has a desire to parent L.B., we do not find that the district court abused its discretion in concluding that termination of his parental rights is in L.B.'s best interests.

A review of the record reveals that Father could not take advantage of the opportunities and resources available to him to resolve his problems. Throughout the nearly two years between the initial CINC filing and the final termination order, Father repeatedly failed to make significant progress on resolving the issues that impact his ability to parent. He continued to use drugs, lived with those who abused drugs, and continued to have contact with Mother notwithstanding their toxic relationship. Based on the evidence presented, we do not find that the district court abused its discretion in determining that the termination of Father's parental rights is in L.B.'s best interests.

CONCLUSION

In summary, we conclude based on our review of the record on appeal in the light most favorable to the State that a rational factfinder could have found by clear and convincing evidence that Father is unfit to parent L.B. and that his unfitness to do so was unlikely to change in the foreseeable future. Moreover, it is important to recognize that any one of these factors standing alone may be sufficient to establish grounds for termination of parental rights. K.S.A. 2020 Supp. 38-2269(f). Here, we find it to be significant that L.B. was four years old at the time she was placed into protective custody

15

and is now nearly seven years old. As such, this action has been ongoing for a substantial period of her life. The district court did not abuse its discretion in determining that the termination of Father's parental rights is in L.B.'s best interests.

Affirmed.